[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11402
Non-Argument Calendar
_____

D.C. Docket No. 4:11-cv-00432-RH-CAS


VICTOR DONTAVIOUS STALLWORTH,

Plaintiff-Appellant,

versus

S. TYSON, Sergeant,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 27, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Victor Dontavious Stallworth, a Florida prisoner, appeals pro se the district court's grant of summary judgment in favor of defendant Sgt. S. Tyson in a 42 U.S.C. § 1983 civil rights action alleging violations of the First, Eighth, and Fourteenth Amendments. Stallworth also appeals the district court's grant of Tyson's application to tax costs.

## I.    BACKGROUND

In his complaint, Stallworth alleged that in December 2010 he submitted a grievance against Tyson, a prison correctional officer. In the early morning of January 1, 2011, Tyson sprayed Stallworth with pepper spray through the feeding flap on Stallworth's cell door. Stallworth alleged that Tyson sprayed him in retaliation for the filed grievance, thus violating Stallworth's First Amendment right to free speech. Stallworth also alleged that the use of pepper spray qualified as unconstitutional cruel and unusual punishment. The district court granted summary judgment in favor of Tyson as to both claims, after concluding that Tyson used the pepper spray because Stallworth refused to surrender a razor blade and was threatening to kill himself. After Stallworth filed a notice of appeal for the summary judgment order, the court granted Tyson's application to tax costs and ordered Stallworth to pay Tyson $385.05.

## II.    DISCUSSION

Stallworth claims that the district court erred in granting summary judgment as to both his retaliation claim under the First Amendment and his excessive-force claim under the Eighth Amendment, because he sufficiently established that genuine issues of material fact existed with regard to the reasons why Tyson used pepper spray on him.[1]  First, Stallworth argues that the prison surveillance footage cannot definitively show that Stallworth had been threatening to kill himself with a razor blade at the time that Tyson sprayed him, and the surveillance camera's partially-obscured view of the hallway in front of Stallworth's cell makes it impossible to know whether or not Tyson threw a razor into the cell through the feeding flap.  Stallworth also argues that he did not confess to owning a razor, and that the court misinterpreted several of his statements that were recorded with a hand-held video camera during his post-pepper spray shower.

Second, Stallworth argues that his account of the pepper-spray incident—that Tyson threw a razor blade into his cell and then sprayed him with pepper spray in retaliation for filing grievances against him—makes more sense than the court's conclusion that he threatened to kill himself with a razor blade, given that prison regulations barred him from owning a razor.  Stallworth also asserts that the court's version of events would have been impossible, because Tyson could not

---

[1] Stallworth raises several arguments on appeal but we will only address Stallworth's claim that his complaint should have been give the same weight as an affidavit and his constitutional claims.

3

have warned Stallworth to put down the razor blade, told his cellmate to cover himself, opened the feeding flap, broken the seal of the pepper-can spray, and then sprayed Stallworth, all within a matter of seconds.

"We review the district court's grant of summary judgment de novo, considering all evidence in the light most favorable to the non-moving party." *O'Bryant v. Finch,* 637 F.3d 1207, 1212 n.9 (11th Cir. 2011) (per curiam). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011). The movant can meet his burden by presenting evidence indicating that there is no dispute of material fact or by showing that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2552–53 (1986). The non-moving party must then go beyond his own pleadings to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. at 2553 (internal quotation marks omitted).

Before we address Stallworth's constitutional claims, we briefly address his argument that the district court should have given the factual statements in his

complaint the same weight as an affidavit.  We agree.  The factual assertions that

Stallworth made in his amended complaint should have been given the same

weight as an affidavit, because he verified his complaint with an unsworn written

declaration, made under penalty of perjury, and his complaint meets Rule 56's

requirements for affidavits and sworn declarations.  *See* 28 U.S.C. § 1746; *Barker*

*v. Norman*, 651 F.2d 1107, 1114–15 (5th Cir. Unit A July 1981) (referring to the

affidavit requirements listed in Rule 56(c)(4)'s predecessor, Rule 56(e)).

Therefore, in reviewing de novo the district court's grant of summary

judgment, we consider whether the allegations of fact made in Stallworth's verified

complaint raise genuine disputes of material fact.  *See Celotex*, 477 U.S. at 323,

106 S. Ct. at 2552.

### A.  *First Amendment Retaliation Claim*

A prisoner may establish a First Amendment retaliation claim by showing

that prison officials retaliated against him for exercising his right to free speech.

*O'Bryant*, 637 F.3d at 1212.  To prevail, the prisoner must establish that:  "(1) his

speech was constitutionally protected; (2) [he] suffered adverse action such that the

[defendant's] allegedly retaliatory conduct would likely deter a person of ordinary

firmness from engaging in such speech; and (3) there is a causal relationship

between the retaliatory action . . . and the protected speech."  *Id.* (internal quotation

marks omitted).

5

With respect to the first element, a prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). The second element—whether the prisoner suffered an adverse action— is an objective standard based on factual inquiry. *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008). To meet the third element, a prisoner bears the burden of showing that his protected speech was a motivating factor behind the actions taken by prison officials. *O'Bryant*, 637 F.3d at 1217. To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights. *Mosley*, 532 F.3d at 1278.

Although we have yet to hold in a published opinion that a close temporal proximity between protected speech and an adverse action may serve as circumstantial evidence of causation in a prisoner's First Amendment retaliation claim, we have determined in another type of retaliation case that temporal proximity is relevant to proving causation. *See, e.g.*, *Stanley v. City of Dalton*, 219 F.3d 1280, 1282, 1291 & n.20 (11th Cir. 2000) (listing temporal proximity as among the relevant factors for showing causation in an employment case involving wrongful termination in violation of the First Amendment).

Here, Stallworth is correct that the two-week gap between the filing of the December 16, 2010, informal grievance and the pepper-spray incident constituted a

6

close temporal proximity that weighs in favor of a causal relationship. *See O'Bryant*, 637 F.3d at 1217. The causal connection is further strengthened by the fact that Tyson had been interviewed about the grievance two days before the pepper-spray incident.

However, the district court granted summary judgment in favor of Tyson after concluding that the record showed that Stallworth had threatened to hurt himself with a razor, and thus Tyson would have used the pepper spray regardless of whether Stallworth had filed any grievances. *O'Bryant*, 637 F.3d at 1217. The question then turns to whether the district court correctly concluded that no genuine issue of material fact existed that Tyson used the pepper spray, not in response to the grievances filed against him, but because Stallworth possessed a razor blade and posed a threat to himself and others.

At the outset, Stallworth's arguments on appeal that he could not have possessed a razor blade because he was being housed in the Administrative Confinement Unit and had a shaving pass need not be considered by this court, because he did not introduce any evidence to support these contentions before the district court. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559, 1573 (11th Cir. 1987) (refusing to consider any exhibits, attached to an appeal brief, that had not been presented to the district court prior to the grant of summary judgment).

However, the district court did err in concluding that Stallworth had completely failed to bring forth any evidence to refute Tyson's justification for using the pepper spray against Stallworth.  Tyson supported his version of events with a case summary from the Florida Department of Corrections, which stated that Tyson observed Stallworth with a razor blade on January 1, 2011, and that Stallworth threatened to kill himself.  Stallworth, in response to the summary judgment motion, cited to his amended verified complaint, in which he alleged that Tyson threw the razor blade into his cell as retaliation for Stallworth filing a grievance against Tyson.  Therefore, in giving credit to Stallworth's version of events—that Tyson threw the razor blade into the cell—genuine issues of fact remain as to whether Stallworth's filed grievances motivated Tyson to spray him with pepper spray, or whether Tyson in fact responded to Stallworth's attempt to hurt himself with a razor.  *See Josendis,* 662 F.3d at 1314–15; *Mosley,* 532 F.3d at 1278.

Moreover, the district court also erred in concluding that the prison surveillance footage refuted Stallworth's factual allegations.  First, while the surveillance video did confirm that Tyson was not holding his pepper spray when he first walked toward Stallworth's cell door, the footage did not clearly show the actions that Tyson took once he arrived at the cell door.  Tyson can be seen in the footage standing in front of Stallworth's cell door, shining his flashlight into the

8

cell's window with his left hand, and then reaching for something on his right side. Although Tyson contends that he only reached for his pepper spray, the video does not clearly show the contents of his hands, in particular whether he held a razor blade.  Also, given that Tyson had his back to the camera and a staircase partially obscured the view, the footage does not reveal Tyson's actions when he opened the feeding flap, much less whether he threw in a razor or merely sprayed the pepper spray.  Second, given the cell's distance from the camera, the small window on the otherwise solid cell door, and the staircase obstructing the view, it is impossible to tell from the surveillance video exactly what Stallworth was doing inside his cell, including whether he was making threatening gestures with a razor blade.  Third, because the surveillance video did not include audio, there is no confirmation that Tyson warned Stallworth to relinquish his razor blade, rather than, as Stallworth contends, stating that the spraying was in retaliation for Stallworth's filed grievances.

Finally, Stallworth argues that the district court misinterpreted two statements about razor blades that he made during his post-pepper spray shower and that were recorded on a hand-held video recorder.  As an initial matter, the district court only considered one of those statements in granting summary judgment:  "That's my motherf------- razor, man, no cuts on me, man," which the court interpreted as an admission by Stallworth that he possessed a razor in his cell

at the time of the pepper-spray incident.  The content of the rest of the hand-held video footage, however, makes it unclear whether Stallworth did in fact admit to possession of the razor.  *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).  The rest of the footage showed Stallworth stating at least four separate times that he had not possessed a razor, and that he had been "set up" by Tyson.  Thus, in light of the obscured view and the lack of audio on the surveillance camera, as well as the contradictory statements recorded on the hand-held video camera, neither piece of surveillance footage appears to be "obviously contradictory" to Stallworth's version of events, and the account of events supported by Stallworth's amended verified complaint should be credited when deciding the issue of summary judgment.  *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) ("Credit[ing] Plaintiff's version of the record evidence where no obviously contradictory video evidence is available.").

## B.  Eighth Amendment Excessive-Force Claim

The Eighth Amendment to the U.S. Constitution "governs prison officials' use of force against convicted inmates."  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is "applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of

10

causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085 (1986) (internal quotation marks omitted).

Factors relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm include the following:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Campbell*, 169 F.3d at 1375 (internal quotation marks omitted). When considering these factors, we give "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). A prisoner may avoid summary judgment, "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987) (per curiam).

The absence of serious injury does not necessarily preclude a claim under the Eighth Amendment, yet the "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of

mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38, 130 S. Ct. 1175, 1178 (2010) (internal quotation marks omitted).  Although the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied, it is not solely determinative of an Eighth Amendment claim.  *Id.* at 38, 130 S. Ct. at 1178–79.  Instead, the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted.  *Id.* at 39, 130 S. Ct. at 1179.

Here, the district court granted Tyson's motion for summary judgment on the excessive-force claim for two reasons:  (1) Stallworth "came forward with no evidence to demonstrate any injury"; and (2) the evidence demonstrated that necessary and non-excessive force had been used to prevent Stallworth from harming himself with a razor blade.  However, the court erred in reaching both conclusions.  First, as discussed above, genuine issues of fact exist as to whether Stallworth actually threatened to harm himself with a razor blade in his cell.  Because the prison's surveillance footage failed to blatantly contradict Stallworth's contention from his amended verified complaint that the blade had been thrown into his cell, it remains for a jury to determine whether Stallworth in fact possessed a razor within his cell and threatened to harm himself, and hence whether Tyson needed to use force in the first place.  *See Pourmoghani-Esfahani*, 625 F.3d at

12

1315; *Campbell*, 169 F.3d at 1375 (determining whether the use of force was malicious and sadistic based on the need for the application of force and the extent of the threat to safety, among other factors).  Had Tyson thrown a razor blade into the cell, as Stallworth alleged, there would not have been a legitimate use for the pepper spray, leading to the conclusion that the spraying was instead a malicious and sadistic act.  *See Whitley*, 475 U.S. at 320–21, 106 S. Ct. at 1085.  Since this factual dispute goes beyond the reasonableness of the pepper spray's use, and instead potentially supports an inference that the spraying had wantonly inflicted pain, Stallworth successfully avoided summary judgment.  *See id.*

Second, the district court wrongly concluded that Stallworth failed to present any evidence of injury.  Rather, in responding to the motion for summary judgment, Stallworth cited his amended verified complaint as evidence of his injuries.  In his complaint, he alleged that he suffered burns, permanent vision loss, and psychological trauma.  As to whether these injuries are *de minimis*, the alleged permanence of his vision loss suggests a severe injury.  Moreover, even if his alleged injuries were not serious, this would not necessarily preclude a claim of cruel and unusual punishment because, in viewing the evidence in the light most favorable to Stallworth, Tyson's use of the pepper spray after planting a razor in Stallworth's cell would be "repugnant to the conscience of mankind."  *Id.* at 327,

106 S. Ct. at 1088 (internal quotation marks omitted); *O'Bryant*, 637 F.3d at 1212 n.9.

## CONCLUSION

Accordingly, we vacate the order granting summary judgment and remand to the district court for further proceedings consistent with this opinion. Consequently, the cost judgment in favor of Tyson no longer is applicable, and we dismiss as moot Stallworth's appeal of the cost judgment.

**VACATED AND REMANDED in part; DISMISSED as moot in part.**